UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>AUSTIN D. WHITSITT,<br><br>Defendant. | 5:22-MJ-00028-DW<br><br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS |

Defendant, Austin D. Whitsitt, filed a *pro se* Motion to Dismiss. (Doc. 3). Whitsitt argues that 36 C.F.R. § 2.51, a regulation regarding demonstrations in national parks, is a facially unconstitutional restriction on the First Amendment's right to free speech. Id. For the following reasons, this court finds that § 2.51 is constitutional and denies Whitsitt's motion.

**FACTUAL BACKGROUND**

The current version of 36 C.F.R. § 2.51 went into effect on February 15, 2018. Section 2.51 lays out permitting restrictions for demonstrations in national parks. It defines "demonstrations" as including "demonstrations, picketing, speechmaking, marching, holding vigils or religious services, and all other like forms of conduct that involve the communication or expression of views or grievances, engaged in by one or more persons, the conduct of which is reasonably likely to attract a crowd or onlookers." § 2.51(a). It also explains

that "demonstrations" do not include "casual park use by visitors or tourists that is not reasonably likely to attract a crowd or onlookers." Id. Under § 2.51(b), demonstrations require a permit from the superintendent and must be held within designated park areas, but the permit requirement has an exception for demonstrations involving 25 persons or fewer. For demonstrations that fall under this exception, "[h]and-carried signs may be used, but stages, platforms, or structures may not be used." § 2.51(b)(1)(iv).

The facts as alleged are that on August 4, 2021, Whitsitt and another man set up a framed banner between the Avenue of Flags and the Grand View Terrace at the Mount Rushmore National Memorial. (Doc. 1 at p. 2). The two men also had a loudspeaker. Id. A park officer approached them and told them that they could not use their loudspeaker or their display at that location, but they could get a permit and move either to the front walkway or the amphitheater stage. Id. Whitsitt began filming the interaction and refused to move to either location. Id. He argued with the officer for 10 minutes and ranted at and berated visitors through his loudspeaker for another 20 minutes. Id. After visitors started yelling back at Whitsitt, the officer cited Whitsitt for engaging in an act requiring a permit without obtaining a permit in violation of 36 C.F.R. § 1.6(g)(1). See id. Whitsitt then refused to identify himself, so the officer informed him that he could either identify himself and be released with a mandatory appearance or go to jail to be identified there. Id. At this point, Whitsitt identified himself, and he was released and cited with mandatory appearances for violation of 36 C.F.R. § 1.6(g)(1) and for making noise that is

unreasonable in violation of 36 C.F.R. § 2.34(a)(3), a disorderly conduct regulation.  See id.

## DISCUSSION

### I.   Mootness

The Government argues that Whitsitt's facial challenge to 36 C.F.R. § 2.51 is moot because he is not charged with a violation of § 2.51 and his charges under 36 C.F.R. § 1.6 and § 2.34 would not be affected by this court's ruling on his motion.  (Doc. 7 at pp. 2-3).  Article III of the United States Constitution limits the jurisdiction of federal courts to "actual, ongoing cases or controversies."  Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990).  "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.  Powell v. McCormack, 395 U.S. 486, 496 (1969).  In other words, when "a federal court can no longer grant effective relief," the case must be dismissed as moot.  Ali v. Cangemi, 419 F.3d 722, 723 (8th Cir. 2005) (quoting Haden v. Pelofsky, 212 F.3d 466, 469 (8th Cir. 2000).

Here, Whitsitt has a legally cognizable interest in the outcome of his motion.  Although he has not been charged with a violation of § 2.51, that regulation defines the activities for which permits are required at national parks.  Whitsitt has been charged with engaging in an activity requiring a permit without obtaining a permit in violation of 36 C.F.R. § 1.6(g)(1).  (Doc. 1 at p. 2).  Whether or not Whitsitt's actions required a permit is directly relevant to whether or not he violated § 1.6(g)(1).  Thus, the result of his facial challenge to § 2.51 is relevant to this case, and Whitsitt's challenge is not moot.

## II. Standing

The Government argues that Whitsitt lacks standing to challenge 36 C.F.R. § 2.51 because he has not been charged with a violation of § 2.51. (Doc. 7 at pp. 3-4). The Government also argues that Whitsitt is not at risk of future prosecution because park officials offered to help him get a same-day permit for the activities for which he was arrested. Id. But as discussed above, Whitsitt was charged with a violation of 36 C.F.R. § 1.6(g)(1) for failing to abide by the regulations set out in § 2.51. Further, the United States Supreme Court has explained that "an overbroad regulation may be subject to facial review and invalidation, even though its application in the case under consideration may be constitutionally unobjectionable." Forsyth County v. Nationalist Movement, 505 U.S. 123, 129 (1992). In Forsyth County, the Supreme Court referred to this principle as an "exception from general standing rules[.]" Id. Thus, Whitsitt has standing to bring this challenge.

## III. Validity of 36 C.F.R. § 2.51

Whitsitt argues that 36 C.F.R. § 2.51 is an unconstitutional prior restraint on free speech and that it is constitutionally invalid. (See Doc. 3 at pp. 3-16).

### A. Prior Restraint

"[I]n the area of free expression a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 757 (1988). In City of Lakewood, the Supreme Court

4

outlined two risks posed by a prior restraint when considering local ordinances granting the mayor authority over the placement of newsracks on public property.  Id. at 753, 757-58.  "First, the mere existence of the licensor's unfettered discretion . . . intimidates parties into censoring their own speech[.]"  Id. at 757.  "Second, the absence of express standards makes it difficult to distinguish, 'as applied,' between a licensor's legitimate denial of a permit and its illegitimate abuse of censorial power."  Id. at 758.

Here, 36 C.F.R. § 2.51 does not provide unfettered discretion to the licensor and does not lack express standards.  Under § 2.51, "[a] permit *will* be approved unless" one of six reasons for denial applies.  § 2.51(f) (emphasis added).  Of these reasons, only two allow for any discretion on the part of the licensor.  See § 2.51(f)(2)-(3).  If "[i]t reasonably appears that the event will present a clear and present danger to public health or safety" or if "[t]he event is of such nature or duration that it cannot reasonably be accommodated in the particular location applied for," the permit will not be approved.  Id.

In Boardley v. U.S. Dep't of Interior, the D.C. Circuit Court of Appeals upheld the "clear and present danger" language of an earlier version of § 2.51 that matched the language in § 2.51(f)(3) today.  615 F.3d 508, 517 (D.C. Cir. 2010).[1]  The Boardley court recognized that "[a]n official tasked with forecasting whether a proposed event might endanger the health or safety of

---

[1] In Boardley, the D.C. Circuit ultimately found that the earlier version of § 2.51 was unconstitutional because it contained no exceptions for individuals or small groups.  615 F.3d at 525.  The current version of § 2.51 contains a small group exception.  § 2.51(b).

5

the public must necessarily make a predictive judgment based on the facts as she knows them and her expertise in the field." Id. Even though the regulation provided park officials with some measure of discretion, "[t]he 'clear and present danger' standard is sufficiently unambiguous and objective to guard against the possibility of it serving as a backdoor artifice for content-based censorship." Id. Similarly, the language of § 2.51(f)(2) and (3) provides sufficiently unambiguous and objective standards to guide decisionmakers in evaluating permit applications. Thus, because § 2.51 does not provide unfettered discretion and does not lack express standards, it is not an unconstitutional prior restraint.

  **B.**  **Constitutional Validity**

When deciding if a governmental regulation is a violation of the First Amendment right to free speech, the court must first decide if the regulated action is speech. See Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 797 (1985) ("[I]f [the regulated action] is not [speech], we need go no further."). Then, the court "must identify the nature of the forum, because the extent to which the Government may limit access depends on whether the forum is public or nonpublic." Id. Last, the court "must assess whether the justifications for exclusion from the relevant forum satisfy the requisite standard." Id.

Here, the regulated activity is clearly speech. 36 C.F.R. § 2.51 regulates "forms of conduct that involve the communication or expression of views or grievances[.]" § 2.51(a). As to forum status, "[t]raditional public fora are those

6

places which 'by long tradition or by government fiat have been devoted to assembly and debate.' " Cornelius, 473 U.S. at 802 (quoting Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983)).  A designated public forum exists when "government property that has not traditionally been regarded as a public forum is intentionally opened up for that purpose." Pleasant Grove City v. Summum, 555 U.S. 460, 469 (2009).  Public property that is not a public forum "by tradition or designation" is a nonpublic forum. See Perry Educ. Ass'n, 460 U.S. at 46.

     Section 2.51 regulates demonstrations in every national park, and it would be all but impossible to determine a single forum status for every national park governed by 36 C.F.R. § 2.51.  See Boardley, 615 F.3d at 515-16.  In Boardley, the D.C. Circuit found that the earlier version of § 2.51 applied to "free speech areas[,]" which were "designated public forums."  Id. at 515.  The Boardley court concluded that, with regard to free speech, "the [National Park Service] regulations must be analyzed as restrictions on speech in public forums, and we need not (indeed, cannot) decide whether the same analysis would apply to the diverse range of other areas within the national parks."  Id. at 515-16.  This court finds Boardley instructive and will analyze § 2.51 under the standard for public fora:  "[A]ny permit scheme controlling the time, place, and manner of speech must not be based on the content of the message, must be narrowly tailored to serve a significant governmental interest, and must leave open ample alternatives for communication."  Forsyth County, 505 U.S. at 130.

### 1. Based on the Content of the Message

Whitsitt argues that 36 C.F.R. § 2.51 is not content neutral because it regulates grievances. (Doc. 3 at pp. 4-5.) "The principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) (citing Clark v. Community for Creative Non-Violence, 468 U.S. 288, 295 (1984)). The Government argues that the six reasons for which § 2.51 allows a permit denial "all relate to public health, safety, and the preservation of park and natural resources." (Doc. 7 at p. 10). This court finds that these six reasons are content neutral because they focus only on interference with a park's regular use, rather than the message conveyed by potential demonstrators. See § 2.51(f)(1)-(6).

Whitsitt claims that because § 2.51 defines demonstrations as "forms of conduct that involve the communication or expression of views or grievances[,]" it is not content neutral. (Doc. 3 at p. 5) (quoting § 2.51(a)). Specifically, he argues that "[a] grievance is an expression of discontent," so the inclusion of "or grievances" in the definition of demonstrations makes § 2.51 content based because it differentiates expression based on its substance. Id. If § 2.51 only regulated expressions of discontent, Whitsitt's argument might have some merit. But § 2.51 applies to the expression of both views and grievances. § 2.51(a). "Views and grievances" is broad enough to apply to all speech. Thus, § 2.51 is content neutral.

8

### 2. Narrowly Tailored to Serve a Significant Government Interest

Whitsitt argues that 36 C.F.R. § 2.51 is not narrowly tailored to serve a significant government interest. (Doc. 3 at pp. 10-11). Whitsitt acknowledges that the government has a significant interest in protecting national parks and preserving their peace and tranquility. Id. at 10. Thus, this court will only address whether § 2.51 is narrowly tailored to serve those interests.

In order to be narrowly tailored, a regulation must not "burden substantially more speech than is necessary to further the government's legitimate interests." Ward, 491 U.S. at 799. The court must look "to the amount of speech covered by the [regulation] and whether there is an appropriate balance between the affected speech and the governmental interests that the [regulation] purports to serve." Watchtower Bible & Tract Soc'y, Inc. v. Village of Stratton, 536 U.S. 150, 165 (2002). Further, narrow tailoring is satisfied if the regulation "promotes a substantial government interest that would be achieved less effectively absent the regulation." Ward, 491 U.S. at 799 (quoting United States v. Albertini, 472 U.S. 675, 689 (1985)). But the regulation "need not be the least restrictive or least intrusive means of" serving "the government's legitimate, content-neutral interests." Id. at 798. "[T]he regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." Id. at 799.

Whitsitt claims that § 2.51 is not narrowly tailored because it is overbroad, covering "almost every imaginable utilization of the First

9

Amendment[.]" (Doc. 3 at p. 10). He argues that several terms used in the definition of demonstrations provided by § 2.51(a) are themselves poorly defined and overbroad, allowing § 2.51 to effectively cover all speech. Id. at 6-11. Specifically, Whitsitt argues that "casual park use by visitors or tourists[,]" "speechmaking[,]" "onlookers[,]" "all other like forms of conduct[,]" "communication or expression of views or grievances[,]" and "reasonably likely to attract a crowd or onlookers" are all terms or phrases that lack definition, "maximiz[ing] the discretion of the official." Id. at 6-10. Whitsitt is correct that these terms provide some discretion to park officials to interpret whether speech activity at a national park falls under § 2.51(a). In Boardley, the D.C. Circuit found that "[i]t is not fatal to the [National Park Service] regulations that they endow park officials with some measure of discretion." 615 F.3d at 518.

Whitsitt claims that the current version of § 2.51 broadened the definition of demonstrations as compared to the earlier version considered by Boardley. (Doc. 3 at p. 11). The earlier version required permits for "[p]ublic assemblies, meetings, gatherings, demonstrations, parades and other public expressions of views . . . within park areas[.]" 36 C.F.R. § 2.51(a) (1966). This court does not see a distinction between the terms that Whitsitt alleges are overly broad in the current version of § 2.51 and "public expressions of views" in the earlier version of § 2.51. In Boardley, the D.C. Circuit recognized that the earlier version of § 2.51 was not overly broad when applied to large groups:

10

"The fit between means and ends is far more precise when the [National Park Service] regulations are applied to large groups." 615 F.3d at 522.

Further, Boardley acknowledged that there are some examples of small groups that can attract significant crowds or otherwise strain park resources. Id. at 522 (citation omitted). The Boardley court found that the earlier version of § 2.51 was overly broad because it applied to all small groups, not just those prone to attracting crowds and straining resources. See id. at 522-23. Under the current version of § 2.51, small groups are still required to attain a permit if they fall under the enumerated reasons for denying a permit to a larger group, if they are "merely an extension of another group already availing itself of the small group permit exception[,]" if they "unreasonably interfere with other permitted demonstrations and special events, or park program activities[,]" or if they use stages, platforms, or structures. § 2.51(b)(1)(i)-(iv). These exceptions to the small group exception are all designed to narrowly tailor § 2.51; small groups need not attain a permit unless they are conducting the sorts of activities contemplated by Boardley as posing a threat to park security or accessibility. See 615 F.3d at 522-23. Because § 2.51 defines demonstrations no more broadly than the earlier version considered by Boardley and because the burden imposed on small groups is narrowly crafted to only apply to those small groups that pose a threat to park security and accessibility, § 2.51 is narrowly tailored to serve a significant government interest.

11

### 3. Ample Alternatives for Communication

Whitsitt argues that 36 C.F.R. § 2.51 does not leave open ample alternatives for regulation because there are no alternatives provided within park areas that are not "First Amendment area[s.]" (Doc. 3 at pp. 11-12, 15-16). Time, place, or manner restrictions must "leave open ample alternative channels for communication of the information." Ward, 491 U.S. at 791 (quoting Clark, 468 U.S. at 293). "While the First Amendment does not guarantee the right to employ every conceivable method of communication at all times and in all places, a restriction on expressive activity may be invalid if the remaining modes of communication are inadequate." City Council v. Taxpayers for Vincent, 466 U.S. 789, 812 (1984) (citations omitted). In determining if the remaining modes of communication are adequate, one consideration is whether the target audience can be reached by those modes. See Ward, 491 U.S. at 802; see also Evans v. Sandy City, 944 F.3d 847, 860 (10th Cir. 2019) (citing Ward for the proposition that in order "[t]o determine whether alternative channels are adequate, courts assess in part the speaker's ability to reach his or her target audience").

Whitsitt appears to misinterpret this standard; he argues that suitable alternatives exist to the regulation, rather than that there are no adequate alternatives for communication provided by the regulation. See id. at 15-16. Essentially, Whitsitt further argues the narrowly tailored prong of the analysis. See id. To the extent that Whitsitt makes an argument that addresses the ample alternatives prong, it is that national parks are public fora, and because

12

denying free speech within the portions of the national parks that are not First Amendment areas restricts expression in public fora, no alternatives suffice unless they allow expression outside of First Amendment areas. See id. at 11-12.

In Boardley, the D.C. Circuit found that the earlier version of § 2.51 did not provide ample alternatives for communication because the proposed alternative, engaging in free speech activities on other property near national parks, did not exist "within the forum in question." 615 F.3d at 524 (quoting Initiative & Referendum Inst. v. U.S. Postal Serv., 417 F.3d 1299, 1310 (D.C. Cir. 2005)). The Supreme Court considered whether a Minnesota State Fair regulation requiring sellers, exhibitors, and distributors of materials at the State Fair to do so from specified locations on the fairground was a permissible time, place, or manner restriction in Heffron v. International Soc. For Krishna Consciousness, Inc. 452 U.S 640, 643, 647-48 (1981). In Heffron, the Supreme Court found that because this rule allowed sellers, exhibitors, and distributors a space within the fairground, the rule did not "deny access within the forum in question." See id. at 655. In other words, alternatives need only exist in some portion of the forum in question, rather than all areas of the forum, as long as those alternatives provide adequate modes of communication. See Taxpayers for Vincent, 466 U.S. at 812.

Here, the remaining modes of communication provided by § 2.51 are adequate. The designation of First Amendment areas balances park officials' need to properly and safely administer park activities with demonstrators' right

13

to convey their message. Under Heffron, the government need not provide these alternatives in every part of a national park. While it is certainly possible that a specific park's designated First Amendment areas would not afford adequate modes of communication to demonstrators, this is a question for an as-applied challenge.[2] Thus, § 2.51 provides ample alternatives for communication and is not constitutionally invalid. Accordingly, it is hereby

ORDERED that Whitsitt's Motion to Dismiss for Facial Invalidity (Doc. 3) is denied.

DATED this 12th day of April, 2022.

BY THE COURT:

*[signature]*

DANETA WOLLMANN
United States Magistrate Judge

---

[2] Whitsitt does not appear to raise an as-applied challenge in his motion. (See Doc. 3 at p. 3) (distinguishing a facial challenge from an as-applied challenge). To the extent that Whitsitt argues that § 2.51 fails the ample alternatives prong as applied at the Mount Rushmore National Monument, this court finds that the implementation at Mount Rushmore provides ample alternative channels for communication. Demonstrators are offered use of six First Amendment areas. First Amendment Activities, Nat'l Park Servs., https://www.nps.gov/moru/planyourvisit/first-amendment-activities.htm (last updated Jan. 14, 2022). Four of these six areas are located at the walkway by which visitors first access the park, providing demonstrators the opportunity to communicate with every visitor who enters and exits. See id. A fifth area provides an amphitheater and is located near where Whitsitt was arrested. See id.; (Doc. 1 at p. 2).